FILED

06 SEP -1 AM 10: 58

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: PDC          DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE GRASSILLI, an individual, and PATRICIA GRASSILLI, an individual,,<br><br>Plaintiffs,<br><br>vs.<br><br>CARLOS E. RODRIGUEZ, an individual, DOE 1 SHERIFF COMMANDER, and DOES 2 through 50, inclusive,<br><br>Defendants. | CASE NO. 06cv0047 BTM(BLM)<br><br>**ORDER GRANTING MOTION FOR LEAVE TO AMEND THE COMPLAINT AND JOIN ADDITIONAL DEFENDANTS** |

Plaintiffs have filed a motion for leave to amend the complaint and join additional defendants. For the reasons discussed below, Plaintiffs' motion is **GRANTED**.

## I. FACTUAL BACKGROUND

The following facts are taken from Plaintiffs' Complaint. The Court makes no findings as to the truthfulness of these allegations.

Plaintiffs Steve Grassilli and Patricia Grassilli are residents of Santa Ysabel, California. On October 11, 1999, Steve filed a civil rights suit in the Superior Court of California, alleging that California Highway Patrol ("CHP") Officer Eric Barr and other CHP officers had conspired to violate his constitutional rights by systematically retaliating against him for filing a citizen's complaint against Barr. (Compl. ¶ 11.) After a six week trial, a jury

found all of the individually named CHP officers guilty of systematic retaliation against Steve and awarded a verdict of $4,512,552.00. (Compl. ¶ 12.)

During the pendency of the lawsuit against the CHP officers, the Grassillis became involved in a civil dispute with their neighbors, Mary and David Larson. The dispute concerned a gate that was at the mouth of an easement which runs through the Grassillis' property and was used by the Larsons to access their property. (Compl. ¶ 13.)

On December 22, 2003, the Larsons sought and obtained a temporary restraining order ("TRO") against the Grassillis from the San Diego Superior Court. The TRO prevented the Grassillis from "chaining or locking the gate at the entrance of [the] road easement." (Exh. A to Comp.) The TRO did not, however, prohibit the Grassillis from closing the gate. The Grassillis contend that it was necessary to close the gate to prevent nearby cows from grazing on their property. (Compl. ¶ 14.)

"Doe 1 Sheriff Commander" instructed Deputy Sheriff Duey[1] to drive 45 minutes to Santa Ysabel to serve Steve with the Larsons' complaint and the TRO. (Compl. ¶ 18.) Deputy Duey served Steve with the papers but did not serve Pati. (Compl. ¶ 19.)

On January 16, 2004, the San Diego Superior Court issued a Preliminary Injunction Order which preliminarily enjoined the Grassillis and Larsons from, among other things, "[l]ocking the Gate at the entrance of the easement," or "[n]ot shutting and securing the Gate with an approved device after opening the Gate for access or egress." (Exh. B to Compl.)

On January 29, 2004, Deputy Sheriff Hoapili[2] was instructed by his Commander to serve the Grassillis with the Preliminary Injunction Order. (Compl. ¶ 20.) Deputy Hoapili was not instructed to serve the Larsons with the Preliminary Inunction Order. (Compl. ¶ 21.) Later, Deputy Hoapili admitted under oath that this was the first time in his 14 year career as a Deputy Sheriff that he had been directed to serve one party to a preliminary injunction order and not the other. (Compl. ¶ 22.)

---

[1] In their Complaint, Plaintiffs referred to Deputy Duey as "Deputy Dewey." Plaintiffs have since learned the correct spelling of Deputy Duey's name and seek leave to amend the Complaint accordingly.

[2] Deputy Hoapili was identified in the Complaint as "Deputy Hoapi."

The Grassillis claim that Steve called the San Diego County Sheriff's Ramona Sub-Station on numerous occasions, requesting assistance with respect to the Larsons' violations of the Preliminary Injunction Order by failing to close the gate. (Compl. ¶ 23.) However, the Sheriffs did not respond to Steve's calls for assistance. (Id.) In contrast, on numerous occasions, when the Larsons called the Sheriff's Department for assistance, multiple deputies would respond to "investigate." (Id.) The Sheriff's Office instructed the Larsons to take pictures of the Grassillis, videotape them and keep logs for use as evidence in connection with a prosecution of the Grassillis for violating the Preliminary Injunction Order. (Id.) The Sheriff's Department shared office space with the CHP Officers against whom Steve had filed the civil rights complaint. (Compl. ¶ 17.)

Defendant Rodriguez is a detective with the San Diego County Sheriff's Department and was assigned to investigate claims by the Larsons that the Grassillis had violated the terms of the court orders. (Comp. ¶ 24.) On January 12, 2004, Rodriguez went to the Grassillis' home to interview them. Rodriguez spoke with Pati only because Steve was not home. Rodriguez claims he was unaware that Deputy Duey never served the TRO on Pati.

Although Rodriguez was the detective assigned to investigate, he never reviewed the Preliminary Injunction Order. (Compl. ¶ 27.) On February 24, 2004, Rodriguez signed a Declaration in Support of Arrest Warrant. In the Declaration, Rodriguez represented that the Grassillis had "closed" the gate in violation of court orders. (Compl. ¶ 28.)

Based on Rodriguez's Declaration, the Grassillis were criminally charged with misdemeanor violations of disobeying a court order, exposing them both to up to six months in jail per violation. (Compl. ¶ 30.) At trial, Rodriguez initially testified that during his interview of Pati, Pati had told him that she had "chained," the gate in violation of the TRO. However, on cross-examination, Rodriguez admitted that Pati never told him she had "chained" the gate. (Compl. ¶ 26.)

At the conclusion of the prosecution's case, the trial judge granted Steve's motion for judgment of acquittal based on insufficient evidence. (Compl. ¶ 31.) After a trial on the merits, Pati was acquitted of the charges against her. (Compl. ¶ 32.)

## II. PROCEDURAL BACKGROUND

On January 9, 2006, Plaintiffs commenced this suit. In their First Cause of Action against Rodriguez and the Doe defendants, Plaintiffs alleged that Defendants violated their First, Fifth, and Fourteenth Amendment rights by participating in a conspiracy to purposefully discriminate against Plaintiffs in retaliation for Steve's lawsuit against CHP Officer Barr. In their Second Cause of Action, Plaintiffs allege that Doe 1 Sheriff Commander and the other Doe defendants were deliberately indifferent to, or implicitly authorized the disparate treatment and retaliation against Plaintiffs by Rodriguez and other subordinate officers in violation of Plaintiffs' First, Fifth, and Fourteenth Amendment rights.

In an order filed on April 4, 2006, the Court granted in part and denied in part a motion to dismiss filed by Rodriguez. The Court held that Plaintiffs had stated a claim for retaliation in violation of their First Amendment right to petition and a claim for violation of their equal protection rights under the Fourteenth Amendment. The Court dismissed Plaintiffs' substantive due process claim under the Fifth and/or Fourteenth Amendment.

## III. DISCUSSION

Plaintiffs seek to amend their Complaint to substitute Sergeant Joe Long,[3] Sergeant Dave Van Nyhuis, and Senior Deputy Torsak[4] for Does 1-3. According to Plaintiffs, it was only after taking discovery in this case that they learned that Senior Deputy Torsak instructed Deputy Duey to serve the TRO on Steve and that either Sergeant Joe Long or Sergeant Dave Van Nyhuis ordered Deupty Hoapili to serve Plaintiffs with the proof of service for the TRO.

Under Fed. R. Civ. P. 15, leave to amend a pleading "shall be freely given when justice so requires." This policy is "to be applied with extreme liberality." Owens v. Kaiser Foudn. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (quoting Morongo Band of

---

[3] In their moving papers and proposed First Amended Complaint, Plaintiffs erroneously identify Sergeant Joe Long as Sergeant Joe Bell.

[4] In their moving papers and proposed First Amended Complaint, Plaintiffs erroneously identify Senior Deputy Torsak as Senior Deputy Torziak.

Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). However, a court need not grant leave to amend where the amendment (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. Amerisourcebergen Corp. v. Dialysist West, Inc., 445 F.3d 1132, 1136 (9th Cir. 2006). Of all of these factors, prejudice carries the greatest weight. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). Absent prejudice or a strong showing of any of the other factors, "there exists a presumption under Rule 15(a) in favor of granting leave to amend." Id.

An amendment of a pleading relates back to the date of the original pleading when relation back is permitted by the law that provides the statute of limitations applicable to the action. Fed. R. Civ. P. 15(c)(1). Under Cal. Civ. Proc. Code § 474, a plaintiff may designate a defendant as a Doe or any other name when the plaintiff is "ignorant of the name of a defendant." A plaintiff is "ignorant of the name" not only when the plaintiff is ignorant of the defendant's identity but also when the plaintiff knows the defendant's actual identity but is unaware of that person's connection with the case or with plaintiff's injuries. Fuller v. Tucker, 84 Cal. App. 4th 1163, 1170 (2000).

Section 474 does not impose upon the plaintiff a duty to go in search of facts he does not actually have at the time the original complaint is filed, and the plaintiff does not relinquish his rights under section 474 merely because he has suspicion of wrongdoing arising from the facts he does know. General Motors Corp. v. Superior Court, 49 Cal. App. 4th 580, 594-96 (1996). "Section 474 is to be construed liberally to accomplish its purpose." Kreines v. United States, 959 F.2d 834, 837 (9th Cir. 1992).

Plaintiffs explain that they did not know of their potential claims against Long, Van Nyhuis, and Torsak until their attorney deposed Deputies Duey and Hoapili in July, 2006. (Garrison Decl., ¶¶ 6-7.) Defendant Rodriguez argues that Plaintiffs learned the identities of Torsak and Van Nyhuis during the course of the misdemeanor criminal case brought against Plaintiffs for violation of the TRO. Rodriguez points out that Van Nyhuis's signature appears at the bottom of the crime incident report filed by the Larsons and Rodriguez's investigative report. (Rodriguez's Exh's B, C.) Rodriguez also directs the Court's attention to Duey's testimony during the criminal case that his "partner" Torsak contacted him and

"asked" him to serve the TRO. (Rodriguez's Exh. G.)

Although Plaintiffs may have known that Long, Van Nyhuis, and Torsak existed, Rodriguez has not shown that Plaintiffs knew that Torsak ordered Duey to serve the TRO or that Long or Van Nyhuis ordered Hoapili to serve the Proof of Service for the TRO. Based on Deputy Duey's testimony that Torsak was his "partner" and "asked" him to serve the TRO, Plaintiffs had reason to believe that Torsak was not a supervisor and that there may have been someone else giving the orders. The fact that Van Nyhuis and Long signed some documents in the criminal case does not necessarily mean that they were the ones who gave orders regarding the service of the various papers. Accordingly, the Court finds that Plaintiffs were ignorant of their potential claims against Long, Van Nyhuis and Torsak at the time they commenced this action and that Plaintiffs have acted with due diligence.

Rodriguez argues that the Court should deny Plaintiffs' motion to amend because amendment would be futile. The Court disagrees. Rodriguez's futility argument focuses on whether Plaintiffs' claims against the newly added defendants (as well as Rodriguez) are supported by the evidence. Whether Plaintiffs will be able to support their claims with evidence is a matter that must be decided on summary judgment. In its previous order, the Court found that Plaintiffs had sufficiently alleged the existence of a conspiracy to retaliate against them for their lawsuit against the CHP officers. Plaintiffs have stated a claim against all of the Defendants, and amendment of the complaint would not be futile.[5]

Therefore, the Court grants Plaintiffs' motion to amend the complaint. Plaintiffs may substitute Long, Van Nyhuis, and Torsak for Does 1-3.

---

[5] Rodriguez also complains that the proposed amended complaint, in addition to joining the new defendants, adds the names of Deputies Hoapili and Duey into paragraphs 41 and 47 (as being inadequately trained and supervised) and adds a new allegation that there was no probable cause to seek an arrest warrant for either Plaintiff. However, these alleged facts were implicit in the allegations of the original complaint and do not alter the claims against Defendants. Importantly, Plaintiffs do not add claims for lack of probable cause or malicious prosecution. If Plaintiffs wish to add such claims, Plaintiffs must seek leave of the Court to do so.

## IV. CONCLUSION

For the reasons discussed above, Plaintiffs' motion for leave to amend the complaint [20-1] and to join additional defendants [20-2] is **GRANTED**. Plaintiffs must file the amended complaint within 10 days of the entry of this order. Defendant Rodriguez must answer the amended complaint within 10 days of the filing of the complaint.

**IT IS SO ORDERED.**

Dated: August 31, 2006

**HONORABLE BARRY TED MOSKOWITZ**
United States District Judge

Copies to:

Magistrate Judge Major
All parties and counsel of record