1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE GRASSILLI, an individual, and PATRICIA GRASSILLI, an individual,,<br><br>      Plaintiffs,<br><br>vs.<br><br>CARLOS E. RODRIGUEZ, an individual, JOE BELL, an individual, DAVE VAN NYHUIS, an individual, SENIOR DEPUTY TORZIAK, an individual, and DOES 4 through 50, inclusive,<br><br>      Defendants. | CASE NO. 06cv0047 BTM(BLM)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Defendant Carlos E. Rodriguez has filed a motion for summary judgment.  For the reasons discussed below, Rodriguez's motion for summary judgment is **GRANTED**.

## I.  FACTUAL BACKGROUND

Plaintiffs Steve Grassilli and Patricia Grassilli are residents of Santa Ysabel, California.  In, 1999, Mr. Grassilli filed a civil rights suit in the Superior Court of California, alleging that California Highway Patrol ("CHP") Officer Eric Barr and other CHP officers had conspired to violate his constitutional rights by systematically retaliating against him for filing a citizen's complaint against Barr.  (Pl.'s Exh. A.)  After a six week trial, a jury found all of the individually named CHP officers guilty of violating Mr. Grassilli's civil rights and awarded

1    compensatory damages, punitive damages, attorney's fees and costs in the total amount of
2    $4,512,552.00.  (Pl.'s Exh. B.)  In a recent decision, the California Court of Appeal found that
3    the punitive damage awards, which totaled $4,005,522.00, were excessive and set the
4    awards aside.  Grassilli v. Barr, 142 Cal. App. 4th 1260 (2006).

5        During the pendency of the lawsuit against the CHP officers, the Grassillis became
6    involved in a civil dispute with their neighbors, Mary and David Larson.   The dispute
7    concerned a gate that was at the mouth of an easement which runs through the Grassillis'
8    property and was used by the Larsons to access their property.

9        On December 24, 2003, the Larsons sought and obtained a temporary restraining
10   order ("TRO") against the Grassillis from the San Diego Superior Court.  (Pl.'s Exh. A.)  The
11   Larsons claimed, among other things, that the Grassillis frequently fastened a chain around
12   the gate so tightly that they could not loosen the chain and open the gate, preventing them
13   from either leaving or entering their property.  (Def.'s Exhs. B, C.)  The TRO prohibited the
14   Grassillis from "chaining or locking the gate at the entrance of [the] road easement."  (Exh.
15   A to Comp.)

16       Mrs. Larson requested the assistance of the Sheriff's Department with respect to the
17   service of the TRO and related court papers on the Grassillis.  (Mary Larson Decl., ¶ 4.)  On
18   December 24, 2003, Deputy Alfred Duey served the TRO and other court papers on Mr.
19   Grassilli.  (Proof of Service, Def.'s Exh. D.)

20       On December 26, 2003, Mrs. Larson went to the Sheriff's Ramona Substation to file
21   a crime incident report.  (Def.'s Exh. E, Mary Larson Decl., ¶ 7.)  Mrs. Larson claimed that
22   on December 24, 2003, shortly after the TRO was served, the Grassillis' children chained the
23   gate closed.  (Def.'s Exh. E, Mary Larson Decl., ¶ 6.)  Mrs. Larson believed that the Grassillis
24   had violated the TRO.  (Id.)

25       Deputy Rodriguez was assigned to investigate the alleged violation of the TRO.
26   (Def.'s Exh. E, Rodriguez Decl., ¶ 1.)  On January 8, 2004, Deputy Rodriguez received a call
27   from Mr.  Grassilli's attorney, who advised Rodriguez that he could interview Mr. Grassilli at
28   the Grassilli residence on January 12, 2004.  (Rodriguez Decl., ¶ 3.)  On January 12, 2004,

Deputy Rodriguez and another officer went to the Grassilli residence. (Rodriguez Decl., ¶ 4.) Upon arriving at the entrance to the easement road, Deputy Rodriguez saw that the gate was secured closed with a chain.  (Rodriguez Decl., ¶ 4; Def.'s Exh. F.)  Deputy Rodriguez removed the chain, opened the gate, and drove up to the Grassilli residence.   (Id.) Rodriguez was greeted by Mrs. Grassilli who informed Rodriguez that Mr. Grassilli was not home.  (Id.)  Rodriguez told her that he was investigating the TRO violation alleged by the Larsons.  (Id.)   Mrs. Grassilli admitted that she had closed the gate, explaining that she needed to do so to prevent cattle from coming on their property.  (Id.; Def.'s Exh. R at 32:11.) She also asked Rodriguez whether he was going to have her arrested for closing the gate. (Id.; Def.'s Exh. R at 50:10-11.)

Rodriguez prepared an investigative report following his visit to the property.  (Def.'s Exh. F.)  In the report, Rodriguez noted that Mrs. Grassilli "admitted closing the gate several times . . . ."  His report concluded: "Based on the validity of the court order, Patricia Grassilli's admission to closing the gate and my observation of the gate being closed, I'm submitting this case for review.  I'm also respectfully requesting that three counts of 166(a)(4) PC Criminal Contempt be issued against Steven and Patricia Grassilli."   The report was forwarded to the District Attorney's Office for a case issuance evaluation. (Rodriguez Dec., ¶ 6.)

On January 16, 2004, the San Diego Superior Court issued a Preliminary Injunction Order which preliminarily enjoined the Grassillis and Larsons from, among other things, "[l]ocking the Gate at the entrance of the easement," or "[n]ot shutting and securing the Gate with an approved device after opening the Gate for access or egress."  (Exh. B to Compl.) According to Rodriguez, he did not take part in any further investigation of the Grassillis and did not have occasion to review the Preliminary Injunction Order. (Rodriguez Decl., ¶ 6.)

Deputy Hoapili was instructed by a Sergeant to serve the Preliminary Injunction Order on the Grassillis.  (Pl.'s Exh. H at 24-25; Pl.'s Exh. I at 4.)  Dupty Hoapili was not ordered to serve the Preliminary Injunction Order on the Larsons.  (Pl.'s Exh. I at 16.)

On February 24, 2004, Rodriguez executed a declaration in support of arrest warrant,

the text of which was almost identical to that of the investigative report.  (Def.'s Exh. J.)  On February 27, 2004, the District Attorney's Office filed a misdemeanor complaint, charging Mrs. Grassilli with having violated the TRO on December 24, 2003.  (Def.'s Exh. I.)  To Rodriguez's knowledge, his declaration was never filed with the court to obtain a warrant.  (Rodriguez Decl., ¶ 8.)  The Grassilis were never arrested.  Mrs. Grassilli eventually entered a fax arraignment.  (Def.'s Exh. L.)

Upon further investigation by the District Attorney's Office, an Amended Complaint was filed on March 2, 2005.  (Def.'s Exh. M.)  The Amended Complaint charged Mr. and Mrs. Grassilli with willfully violating the TRO on December 31, 2003.  On March 11, 2005, a Second Amended Complaint was filed, adding a charge against Mr. Grassilli for willfully violating the preliminary injunction order on or about November 24, 2004.  (Def.'s Exh. N.)

At trial, Rodriguez initially testified that during his interview of Mrs. Grassilli, she had told him that she had "chained" the gate.  (Pl.'s Exh. K at 4-5.)  However, on cross-examination, Rodriguez admitted that Mrs. Grassilli never told him she had "chained" the gate.  (Id. at 7.)  The criminal case against Mr. Grassilli was dismissed at the conclusion of the People's case.  (Def.'s Exh. O.)  As for Mrs. Grassilli, the jury returned a verdict of not guilty.  (Def.'s Exh. Q.)

## II. STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party.  Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving party can

satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. Id. at 322-23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 314.  The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256.  When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. DISCUSSION

Plaintiffs' remaining claims against Rodriguez are § 1983 claims for (1) violation of the First Amendment by retaliating against the Grassillis for Mr. Grassilli's lawsuit against the CHP officers; and (2) violation of equal protection.  The Court addresses each of these claims below.


A.      First Amendment Retaliation Claim

Deliberate retaliation by state actors against an individual's exercise of his right to access the courts is actionable under section 1983. Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  The initial burden rests on the plaintiff, who must show that his protected conduct was a "substantial" or "motivating" factor in the defendant's actions. The burden then shifts to the defendant who must establish that he would have engaged in the same actions even in the absence of the plaintiff's protected conduct. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

1    Plaintiffs argue that the Court can infer retaliatory motive from Rodriguez's intentional

2    swearing to "false facts" to prompt a criminal prosecution against the Grassillis.  However,

3    the evidence before the Court does not support Plaintiffs' allegation that Rodriguez

4    intentionally swore to false facts to instigate a criminal case against them.

5    Rodriguez's investigative report and declaration in support of arrest warrant accurately

6    stated that Mrs. Grassilli admitted to "closing" the gate.  Neither the report nor the declaration

7    stated that Mrs. Grassilli admitted to "chaining" the gate.

8    Although the TRO did not prohibit merely "closing" the gate, based on the facts he

9    knew, Rodriguez had reason to believe that Mrs. Grassilli had actually closed the gate by

10   securing it with a chain, thereby violating the TRO.  On January 12, 2004, Rodriguez

11   observed that the gate was chained closed.  Rodriguez also observed that the gate would

12   not remain closed and would swing open unless some device could be used to secure it in

13   the closed position.  (Rodriguez Dec., ¶ 4.)[1]

14   Rodriguez told Mrs. Grassilli that the gate was secured closed by a chain.  (Def.'s Exh.

15   R at 33.)  Mrs. Grassilli told Rodriguez that she had closed the gate and expressed that she

16   did not know why they could not close their gate.  (Id. at 32-33.)  Mrs. Grassilli also explained

17   that her neighbors would sometimes close the gate for the Grassillis and might have used

18   the chain themselves.  (Id. at 41.)

19   There is no evidence that Mrs. Grassilli denied using a chain to secure the gate closed

20   or distinguished between "closing" and "chaining" the gate.  Similarly, there is no evidence

21   that Rodriguez had knowledge that Mrs. Grassilli used some other method than chaining to

22   secure the gate in the closed position.

23   Based on the evidence available to Rodriguez, it was reasonable for him to conclude

24   that the Grassillis had violated the TRO.[2]  Accordingly, Plaintiffs' assertion that Rodriguez

25

26   [1] That the gate needed to be secured to remain closed is corroborated by the fact that
     the Preliminary Injunction Order prohibited "not shutting and securing the gate" with an
27   approved device.

28   [2] There is an issue as to whether Mrs. Grassilli was properly served with the TRO.
     The Proof of Service indicates service on "Steve Grassilli" only.  However, when Rodriguez
     spoke to Mrs. Grassilli, she indicated that she had knowledge of the TRO even though she

1   intentionally swore to false facts lacks evidentiary support.

2       Plaintiffs do not point to any other evidence tending to show that Rodriguez was

3   retaliating against the Grassillis for Mr. Grassilli's lawsuit against the CHP officers.   The

4   mere fact that Rodriguez had prior knowledge that Mr. Grassilli had filed a lawsuit against

5   CHP officers (Pl's Exh. F at 7:1-8:9) does not establish retaliatory motive.  As pointed out by

6   Plaintiff, Ramona is a small town, and the Sheriff's Department and CHP were located in the

7   same building.  There is no evidence that Rodriguez spoke to anyone in the CHP about his

8   investigation, nor is there any evidence that Rodriguez discussed Mr. Grassilli's lawsuit with

9   his fellow officers in the context of his investigation.

10       Plaintiffs have not satisfied their initial burden of establishing that Mr. Grassilli's

11   protected conduct was a "substantial" or "motivating" factor in Rodriguez's actions.  A plaintiff

12   "may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate

13   law enforcement initiatives." Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986).

14   Therefore, Rodriguez is entitled to summary judgment on Plaintiffs' First Amendment

15   retaliation claim.

16

17   B.   Equal Protection Claim

18       Plaintiffs do not claim that Rodriguez's actions, in and of themselves, violated their

19   equal protection rights.  Instead, Plaintiffs claim that Rodriguez was part of a conspiracy

20   within the Sheriff's Department to deny Plaintiffs of their equal protection rights by failing to

21   respond to Plaintiffs' calls while responding to those of the Larsons, serving only Plaintiffs

22   with the preliminary injunction order, and encouraging the Larsons to keep logs and

23   photographs to aid in the prosecution of Plaintiffs.

24       Even assuming there is a triable issue as to whether other individuals in the Sheriff's

25   Department treated Plaintiffs unequally, there is no evidence that Rodriguez conspired with

26   these individuals.  To prove a civil conspiracy, Plaintiffs are required to show that the

27   _____

28   had not read the papers.  (Def.'s Exh. F.)  Even if service on Mr. Grassilli was insufficient to
    constitute service on Mrs. Grassilli, it was not unreasonable for Rodriguez to believe that
    Mrs. Grassilli had been properly served.

conspiring parties "reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." <u>Gilbrook v. City of Westminster</u>, 177 F.3d 839, 857 (9th Cir. 1999) (quoting <u>Vieux v. East Bay Reg'l Park Dist.</u>, 906 F.2d 1330, 1343 (9th Cir. 1990)).  Although each participant need not know the exact details of the plan, each participant must at least share the common objective of the conspiracy.  <u>Id.</u>  "A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions." <u>Id.</u>

Nothing about Rodriguez's conduct supports an inference that he conspired to deprive Plaintiffs of their constitutional rights.  Similarly, there is no circumstantial evidence supporting an inference that Rodriguez participated in a conspiracy to deny Plaintiffs equal protection.  Plaintiffs point to a Sheriff's meeting during which Deputy Rylaarsdam spoke to other deputies about how to respond to calls regarding claimed violations of the court's Preliminary Injunction Order. It appears that there is a dispute over what exactly Rylaarsdam said and whether his comments were limited to calls from the Grassillis or were directed towards both the Larsons and the Grassillis. (<u>Compare</u> Rylaarsdam Decl. <u>with</u> Hoapili Depo. (Pl.'s Exh H at 48-51).)  However, this meeting took place in or about May, 2004, *after* Rodriguez conducted his investigation.  Furthermore, there is no evidence that Rodriguez attended this meeting or consented to participate in any plan to treat the Grassillis differently from the Larsons.

Plaintiffs fail to raise a genuine issue of material fact as to Rodriguez's alleged participation in a conspiracy to deprive Plaintiffs' of their equal protection rights.  Therefore, the Court grants summary judgment in favor of Rodriguez on this claim as well.[3]

///
///
///
///

_____

[3] Because the Court finds that there is no genuine issue of material fact with respect to the alleged constitutional violations, the Court need not reach the issue of qualified immunity.

## IV.  CONCLUSION

For the reasons discussed above, Rodriguez's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

DATED:  January 3, 2007

*Barry Ted Moskowitz*

Hon. Barry Ted Moskowitz
United States District Judge

9

06cv0047 BTM(BLM)